Case 4:21-cv-00007-MFU-RSB   Document 34   Filed 03/15/22   Page 1 of 20   Pageid#: 184

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 15 2022

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| **PATRICIA ALBERTA NEWELL**    ) | |
|     Plaintiff,    ) | |
| ) | Civil Action No. 4:21-cv-007 |
| v.    ) | |
| ) | |
| **CARTER BANK & TRUST,**    ) | By: Michael F. Urbanski |
|     Defendant    ) | Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiff Patricia Alberta Newell ("Newell") filed this lawsuit on February 4, 2021, alleging that Defendant Carter Bank & Trust ("Carter Bank") violated her rights under the Age Discrimination in Employment Act, 29 U.S.C. § 623, ("ADEA") and the Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101 ("ADAAA"). On April 23, 2021, she filed an amended complaint. Am. Compl. ECF No. 13. Newell was 67 and suffered from several medical conditions at the time she was terminated. Newell alleges that Carter Bank terminated her based upon her age and disabilities in retaliation for speaking out on behalf of another employee who complained about being terminated because of her age. On May 7, 2021, Carter Bank filed a motion to dismiss Counts II and III of Newell's amended complaint. ECF No. 14. Newell responded on May 21, 2021. ECF No. 17. The parties briefed the issues and a hearing was held on June 22, 2021. For the reasons discussed below, the Court **DENIES** Carter Bank's motion to dismiss in part and **GRANTS** Carter Bank's motion to dismiss in part.

1

I.      **Background**

At the time Newell filed her complaint, two other age discrimination lawsuits were pending against Carter Bank. In <u>Kendrick v. Carter Bank & Trust, Inc.</u>, No. 4:19-cv-00047 (W. D. Va. filed Dec. 2, 2019), plaintiff Bradford Kendrick alleges age discrimination and retaliation. In <u>Burnopp v. Carter Bank & Trust, Inc.</u>, No. 4:20-cv-00052(W. D. Va. filed Aug. 31, 2020), plaintiff Donna Burnopp alleges age discrimination.

The following facts are taken from Plaintiff Patricia Alberta Newell's Amended Complaint, ECF 13, and are viewed in the light most favorable to her as the nonmoving party.

The founder of Carter Bank, Worth Harris Carter, Jr. ("Carter"), hired Newell on or about January 17, 1999, as a "Drive-Thru Teller." Newell worked at Carter Bank for 21 years, most recently serving as an Assistant Vice President and Branch Manager of the Falmouth, Virginia branch before her termination on May 1, 2020, at the age of 67.

Newell alleges that her performance was always excellent, and she consistently met or exceeded Carter Bank's expectations. In the fall of 2019, Barbara Zaccagnino ("Zaccagnino"), the Area Manager, told Newell that customers went to the Falmouth branch because of Newell and because customers knew she would always do her best for them.

Carter died in April 2017. Newell alleges that new management, installed after Carter's passing, made a clear and systematic effort to terminate older employees in violation of the ADEA. Newell believes Donna Burnopp's termination supports this belief. Burnopp was 69 when she was embarrassingly terminated in the middle of business hours in front of clients and other staff members in July 2019. Burnopp's position was split into three positions and filled by younger employees. Shortly after the termination, Zaccagnino made statements to

Newell about Carter Bank having "younger voices to speak and fight for." In the same conversation, Zaccagnino also asked Newell about her plans to retire.

During an August 2019 conversation, Zaccagnino mentioned Burnopp's termination to Newell. Newell said that what happened to Burnopp "was not right," and that she was going to tell the truth in Burnopp's pending legal matter concerning age discrimination. Previously, Newell made similar comments at a July 2019 retirement party that was attended by several administrators. Newell stated that Burnopp had been treated poorly and that she intended to testify honestly in Burnopp's EEOC investigation.

Newell alleges that Carter Bank also discriminated against other older employees including Bill Oeters, Brad Kendrick, Vicki Craig, Stan Foley, and Chuck Martin. Oeters is of similar age to Newell and Burnopp and resigned after Carter Bank told him he would not receive his expected annual raise. Kendrick alleged in his complaint that he was terminated after filing suit against Carter Bank and was present at a meeting where Matt Speare, EVP and CIO, stated "all of us sitting around the table are getting older," and "the Bank needs to hire younger employees." ECF No. 84, at 13 in Kendrick, 4:19-cv-00047.

Carter Bank also allegedly denied older employees proper pay raises. Alycia Garcia, an employee in her twenties, received a six percent pay increase while Evelyn Frulla, an employee in her fifties, was given a two percent pay increase. Newell says that Frulla was informed that she would receive an additional four percent raise to match Garcia's raise if she moved to the drive-thru. However, even after Frulla moved positions, the raise never came. On several occasions, Newell asked Carter Bank supervisors and other human resources personnel to

provide Frulla with the promised raise. Though all agreed that Frulla was entitled to the raise, she never received it.

Newell alleges that supervisors, including Jonathan Rhatigan, asked her repeatedly about her retirement plans although she had no plans to retire. Within a seven-month timespan, Newell estimates management asked ten times "how much longer are you going to stay?" During meetings, Zaccagnino reacted enthusiastically toward younger employees' participation but did not share the same enthusiasm when older employees participated. In debriefings after meetings, Zaccagnino was overheard saying "the younger employees want to learn unlike some older employees."

In December 2019, Newell was written up for failing to file a drawer shortage form for a teller. However, at the time of the shortage, Newell was on vacation and could not possibly have completed the paperwork. When she returned, she filled out the form as directed by Kerr, Zaccagnino's supervisor. After filing it, Zaccagnino told Newell that she did not want a record of a drawer shortage "on a young teller['s] file."

After these incidents and Newell's return from vacation, Zaccagnino asked Newell about her retirement plans again. Zaccagnino, Rhatigan, and Kerr subsequently told tellers that they heard Newell was "retiring soon." Two other employees, Stan Foley and Olivia Karavantakis, separately stopped by Newell's branch to ask Newell if she had plans to retire or had picked a specific retirement date. On March 2, 2020, there was a meeting with Virginia Cassell, the Lake Ridge branch manager, Newell, and three Carter Bank management supervisors. Cassell and Newell, who were both older, were questioned about retiring. The management supervisors also stated that Carter Bank needed "to make room for these young

4

people coming up" and that "young people really like to learn unlike the old people." After this meeting, Zaccagnino also began stopping by Newell's desk each week to "check on" her.

In March 2020, during a discussion about possible COVID-19 staff reductions, Zaccagnino said that it was "time for long-term employees to retire" so that "younger tellers could keep their jobs." Zaccagnino also stated that termination of older staff members would be "done one way or another." Paul Carney of human resources stated that the bank would not move forward with staff cuts because it would be unfair to send young tellers to find work in the difficult job market and that staff cuts would not occur due to COVID-19 unless there were blatant or criminal violations of company policy or the law.

At a virtual all-staff meeting, Kathy Gravely, the Retail Delivery Director, said that it was time for long-term employees to retire. After the meeting, two employees from a different branch told Zaccagnino they would retire. Then, in March 2020, customers randomly began asking Newell about her retirement. One customer said that Rhatigan told them Newell was retiring.

In April 2020, Newell spoke to Stan Foley, Facilities Personnel, about the pattern of many older employees being let go and about Newell's feeling that the administration was also "trying to get rid of her." Newell's fear came true a month later when she was terminated in May 2020. The reason given for Newell's termination was that she had mishandled a form. However, Newell asserts that she followed all instructions regarding the form given to her by Zaccagnino. Newell was replaced by Matt Martin, a man in his thirties. Martin receives $8,000 more per year than Newell did in the same Branch Manager position.

Newell suffers from Macular Corneal Dystrophy, Minimal Change Disease, Graves' disease, Casselman's disease, and diverticulosis. These impair several of Newell's daily life activities and functions including seeing, eating, speaking, walking, and working while standing for extended periods of time.

Carter Bank was aware of Newell's impairments. Newell could perform all her work activities with or without accommodations. However, in certain moments these medical conditions would cause Newell's speech to be "off" or her to be "wobbly." Jokes and comments were made by coworkers that Newell came to work intoxicated due to slurred speech caused by her conditions. Newell's conditions also caused her eyes to become visibly swollen after using the computer all day, and Zaccagnino told Newell that she should have someone check her work because of her eye problems. In one 2019 conversation, Rhatigan both discussed Newell's health problems with her and asked about her retirement plans.

Newell alleges three causes of action: (1) a hostile work environment and wrongful termination in violation of the ADEA; (2) retaliation in violation of the ADEA; and (3) a hostile work environment and wrongful termination in violation of the ADAAA. In its motion to dismiss, Carter Bank argues that Newell pleads insufficient facts to make claims in the second and third causes of action, Count II and Count III. Carter Bank does not contest the first cause of action, Count I, in its motion to dismiss. Mot. to Dismiss, ECF No. 14.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

A person alleging discrimination must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act because Title VII gives initial enforcement action to the EEOC. Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). A charge is well pled when it contains a written statement sufficiently precise to identify the parties and to describe generally the action or practices about which the claimant complains. 29 C.F.R. § 1601.12(b). It is uncontested that Newell timely filed her EEOC claim and received a "right to sue" letter.

### III. Discussion

#### A. Count II: ADEA Retaliation Claim

Newell argues that Carter Bank retaliated against her in violation of the ADEA because of her opposition to Carter Bank's termination and discrimination of several older employees and her comments to supervisors opposing the actions. Am. Compl., ECF No. 13, at 17. Carter Bank argues that Newell's pleading fails to plausibly state a claim for ADEA retaliation. Mot. to Dismiss, ECF No. 14, at 9.

The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In addition, the ADEA prohibits employers from discriminating against an employee who "has opposed any practice made unlawful by this section, or because such individual…has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

Newell argues that she states a claim because (1) she mentioned her participation in Burnopp's EEOC investigation, (2) she told Zaccagnino she opposed how Burnopp's termination was handled, and (3) she complained to Stan Foley about Carter Bank's alleged discriminatory practices. Carter Bank argues (1) that Newell never made any statements opposing age discrimination, (2) that her conversations with Foley do not count as opposition, and (3) that her statements regarding Burnopp's termination were not age related. Carter Bank also argues that promising to be truthful under oath is a neutral statement and not an expression of opposition.

In analyzing retaliation claims brought under the ADEA, courts use the same standards as those for retaliation claims brought under Title VII. Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 408 (M.D.N.C. 2004). A prima facie case of retaliation under Title VII requires demonstrating (1) the employee was engaged in a protected activity through participation or opposition, (2) an adverse employment action was taken against the employee, and (3) there was a causal link between the protected activity and adverse action. Id. at 258. Laughlin v. Metro Washington Airports Auth., 149 F.3d 253, 257 (4th Cir. 1998). At the motion to dismiss stage, Newell must assert facts from which the defendant may be given fair notice of the claim and its grounds. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Pleading requirements are satisfied by demonstrating that Newell participated in a protected activity or opposed an unlawful practice violating 29 U.S.C.A. § 623. Participation in a protected activity encompasses making a charge, testifying, assisting, or participating in an investigation, proceeding, or litigation under 29 U.S.C.A. § 623. See 29 U.S.C.A. § 623(d).

Opposition occurs when a plaintiff acts in a manner that opposes any practice made unlawful by the ADEA. Id. For Title VII purposes, the Supreme Court defined "oppose" "by looking to its ordinary meaning: 'to resist or antagonize ...; to contend against; to confront; resist; withstand, ... to be hostile or adverse to, as in opinion.'" DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009)). According to the Court, the threshold for oppositional conduct is not onerous. Id. "[W]hen an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." Crawford, 555 U.S. at 276.

The Fourth Circuit also articulates an expansive view of opposition conduct. DeMasters, 796 F.3d at 416. Accordingly, opposition conduct includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin, 149 F.3d at 259. "[A]n employee is protected when she opposes 'not only ... employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir.2005)). Lastly, a "Title VII violation to which the oppositional communication is directed 'may be complete, or it may be in progress.'" Id.

In summation, courts examine a plaintiff's actions through a broad lens by piecing together individual actions. Then courts ask whether a plaintiff's conduct "communicates to her employer a belief that the employer has engaged in ... a form of employment

10

discrimination." Crawford, 555 U.S. at 276. Lastly, courts ask whether the conduct "concerns subject matter that is 'actually unlawful under Title VII' or that an employee 'reasonably believes to be unlawful.'" Boyer-Liberto, 786 F.3d at 282.

Newell may sufficiently state a claim by pleading either participation *or* opposition. Newell's amended complaint specifies that her claim is based on opposing activity. See Am. Compl. ECF No. 13 at ¶ 112 (Plaintiff… engaged in the conduct of **opposing** age discrimination….).

Newell argues she opposed violations of the ADEA three times. First, Newell made comments opposing age discrimination when she mentioned her participation in Burnopp's pending EEOC investigation at another employee's retirement party. Am. Compl., ECF No. 13 at 13. In addition to commenting about her participation, Newell stated that she believed Burnopp's termination "was not right" and that she would be honest when under oath in Burnopp's case. Id. Second, on another occasion, Newell made statements to Zaccagnino that Burnopp's termination was "not right" after Zaccagnino raised the topic. Id. at 14. Third, Newell engaged in opposition activity with other bank employees by discussing her opposition to alleged bank policies negatively affecting older employees and Newell's personal fears of being targeted soon after. Id. at 14.

Carter Bank argues that Newell's actions never rose to a level which would establish protected opposition action and therefore cannot satisfy the first element. Instead, Carter Bank argues that Newell's actions were just thoughts and words shared without legally recognizable or protectable significance. Carter Bank also argues that Newell cannot plead an opposition

claim because the time that elapsed between Newell's actions and her termination is too long to demonstrate a sufficient causal link between the events to satisfy element three.

The Fourth Circuit's test for analyzing whether there is opposition conduct requires determination of whether an employee's entire course of conduct states a belief to the employer that the employer is engaged in unlawful discriminatory conduct. DeMasters, 796 F.3d at 417-18. The substance and location of Newell's conduct satisfies this test. Newell's opposition actions occurred at work while in front of coworkers and other individuals in Carter Bank's management including direct supervisors. Id. at 422-23 (opposition activity requires the conveyance of opinions to an employer). Importantly too, Newell's words, that Carter Bank's treatment of Burnopp and other older employees was "not right," sufficiently suggest that Newell opposed Burnopp's termination and Carter Bank's treatment of older individuals. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir.1981) (informally voicing complaints to employers is oppositional activity). Moreover, Newell engaged in opposition under the belief that the Carter Bank's actions were illegal under the ADEA. Newell's later comments to Foley also support finding that Newell engaged in oppositional activity. Am. Compl., ECF No. 13 at 14-15. The two discussed their dissatisfaction with the trend of older employees leaving the office because of actions by management and Newell stated her belief that management was trying to get rid of her. Id. When all these actions are examined together, they sufficiently demonstrate that Newell engaged in protected opposition activity.

Newell's termination satisfies the second required element of a retaliation claim and demonstrates an adverse employment action.

Element three of a retaliation claim requires a plaintiff to plead facts alleging that her employer took adverse action "because" she opposed an unlawful practice. 42 U.S.C. § 2000e–3(a). This causation standard does not always require pleading "very close" temporal proximity of the retaliatory action and the protected activity. See Reardon v. Herring, 191 F. Supp. 3d 529 (E.D. Va. 2016) ("Where causation is based on temporal proximity alone, the retaliatory action must be "very close" in time to the protected activity to support a prima facie case.") (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). A three or four-month period between the protected activity and adverse reaction is "too long to establish a causal connection by temporal proximity alone." Reardon, 191 F. Supp. 3d at 551. However, other relevant evidence can be used to establish causation, such as continuing retaliatory conduct and animus from the time of original opposition activity to the plaintiff's termination. Id. at 552 (discussing Hart v. Hanover Cty. Sch. Bd., 2013 WL 1867388, at *5 (E.D.Va. May 2, 2013), aff'd, 547 Fed.Appx. 298 (4th Cir.2013)).

Carter Bank argues that Newell's opposition statements and actions are not closely related to her termination and therefore cannot be the cause of her termination. Carter Bank supports its argument by emphasizing the large gap of time between Newell's opposition actions and her termination. This temporal proximity argument warrants merit but fails to recognize that other relevant information shows sufficient causal connection. See id.

Newell's known opposition activity first began at the retirement party in July 2019. Am. Compl., ECF No. 13 at 3. Her comments to Zaccagnino occurred in August 2019 and her conversation with Foley occurred in March 2020. Id. at 14-15. Newell's termination occurred in May 2020. Id. at 12. Using this timeline, only Newell's conversation with Foley could

possibly satisfy the causal connection requirement based upon temporal proximity alone. See Reardon, 191 F. Supp. 3d at 551 (3-4 months between opposition actions and retaliation is too long to establish causation by proximity alone).

Although Newell may not allege enough facts to sufficiently show causation based on temporal proximity, she does sufficiently plead facts of continuing retaliatory conduct and animus that would satisfy the causation requirement. After her opposition actions in July 2019, Newell was asked repeatedly about her plans to retire despite not conveying to management an intention to retire at any foreseeable time. Am. Compl., ECF No. 13 at 4. In December 2019, Newell's trust and credibility with coworkers was damaged because Newell was falsely accused by human resources of stating that another employee attended work intoxicated. Id. at 6. Also at this time, Newell was reprimanded for failing to complete a drawer shortage form despite being on vacation at the time in question and not knowing of the issue. Id. at 7. Lastly, Newell was terminated in May for a mistake which younger employees were often forgiven. Id. at 10, 12. Because of this alleged continuous animus and retaliatory conduct which occurred after Newell's opposition activity, Newell has adequately pleads that her termination was causally related to her opposition activity.

### B. Count III: ADAAA Disability Discrimination Claim

Newell also alleges that she was discharged because of her disabilities. Am. Compl., ECF No. 13, at 19. The ADA, amended by the ADAAA in 2008, prohibits discrimination "against a qualified individual on the basis of disability in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual is one who "with or without reasonable

14

accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual; ...." 42 U.S.C. § 12102. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). "Whether a plaintiff is disabled is a question of law for the court." Cash v. Magic City Motor Corp., 7:16-CV-00192, 2017 WL 281755 (W.D. Va. Jan. 20, 2017) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) ("Whether [the plaintiff] meets the definition of the statute, and therefore can bring a claim under the statute, is a question of law for a court, not a question of fact for a jury.")). According to the ADAAA and 42 U.S.C. § 12102, the definition of disability "shall be construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A); Cash 7:16-CV-00192 at *2.

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" Jacobs v. N.C. Admin. Off. of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (quoting EEOC v. Stowe–Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir.2000)). Fulfillment of the third element requires demonstrating that the plaintiff's disability was a "motivating factor" in discharge and not the sole reason for discharge. Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999).

15

Newell's amended complaint sufficiently describes her disability to state a claim under the ADAAA. In ¶¶ 73-76 of the amended complaint, Newell sufficiently describes her condition and specifies that it negatively impacts her ability to fulfill life activities outlined in 42 U.S.C. §12102. Amend. Compl. ECF No. 13 at 11 (Because of her condition, Newell had trouble seeing, speaking, and walking). Importantly too, Newell's amended complaint provides evidence that management and coworkers knew of her disability. See id. at 11 (Newell's supervisors, Zaccagnino and Rhatigan, were aware and informed of Newell's disabilities).

Newell's amended complaint also sufficiently describes that she was a qualified individual for her job. Newell was qualified for her position based upon her experience with the bank, popularity with customers, and expertise with her job. Newell pleads that she had worked for Carter Bank since 1999 and risen from a drive-thru teller to Assistant Vice President, Branch Manager of the Falmouth, Virginia branch. Id. at 3. Furthermore, management informed Newell that customers visited the Falmouth branch specifically because of Newell. Id. Lastly, Newell did not receive more than one negative performance review and, as far as she understood, her work performance always met or exceeded Carter Bank's expectations. Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 574 (4th Cir. 2015) (explaining that one signifier of an individual being unqualified was multiple negative performance reviews); Am. Compl., ECF No 13 at 11.

Lastly, Newell's amended complaint sufficiently pleads the reasonable possibility that adverse action was taken against Newell because of her disability. Carter Bank argues that Newell cannot demonstrate causation because she does not reasonably plead that her disability was a contributing factor to her termination. However, Newell supports finding causation with

16

statements that her supervisors displayed negative attitudes toward her regarding her disability in the time leading up to her termination. Id. at 11-12 Alleged negative sentiments were also echoed in management actions which included (1) frequenting the office more than normal to check up specifically on Newell, (2) questioning Newell about her unsubstantiated retirement plans in the same conversation as one about her disabilities, (3) telling Newell her work should be checked because of her eye problems although there had been no suggestion her work contained errors, (4) checking only Newell's work after a training session, and (5) expressing surprise that Newell was the first to finish and had not made a mistake. Id. at 8, 11, 12. Lastly, despite disagreement between the parties about the validity of Newell's discharge, her discharge counts as a negative employment result that is potentially traceable to her disability. Because Newell's amended complaint sufficiently pleads all three elements, her discrimination claim in Count III cannot be dismissed.

### C.  Count III: ADAAA Hostile Work Environment Claim

In Count III, Newell also alleges that Carter Bank harassed and discriminated against her by creating a hostile work environment. Am. Compl., ECF No. 13, at 20. To plead a hostile work environment claim, Newell must establish that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment; and (5) some factual basis exists to impute liability for the harassment to the employer. Drumheller v. Food Lion, LLC, No. 3:18CV00117, 2020 WL 522714, at *7 (W.D. Va. Jan. 31, 2020) (citing Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001)). When considering whether a work environment is hostile, consideration is

17

given to factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). While all these factors are relevant, no single factor is dispositive. Id. The effect of hostility on a plaintiff's psychological well-being is also relevant to determinations of whether an environment is abusive or hostile. Id.

Carter Bank argues that Newell cannot demonstrate the second and fourth elements of a hostile work environment and believes that many of its actions were diligent efforts to ensure that Newell could perform her job. ECF No. 15 at 23. The facts alleged in Newell's amended complaint do not rise to the level of a plausible hostile work environment claim.

In her amended complaint, Newell describes words and actions by employees and management at Carter Bank that allegedly created a hostile work environment for her. Carter Bank employees were aware of Newell's disabilities and the fact that she did not drink alcohol. Am. Compl., ECF No. 13 at 11. Nevertheless, Newell alleges that employees joked in the office that Newell had been out drinking when she appeared wobbly because her medication's effects were slow to start. Id. Carter Bank management also allegedly made statements and took actions that Newell believed suggested that Carter Bank favored younger, healthier employees in the company. See id. at 4 (statement that Carter Bank had "younger voices to speak up and fight for"); id. at 11 (In a conversation about her disabilities, management asked Ms. Newell about her plans for retirement.); id. (Management unprovokedly told Ms. Newell she should have individuals check her work because of her eye problems.); id. at 8

(Management checked only Ms. Newell's work following a training and acted surprised that her work did not contain errors.).

These actions do not demonstrate a hostile work environment because Newell does not allege that her job performance suffered because of the environment created by management. See id. at 16 ("prior to [her] termination… she was performing her work at a satisfactory level and meeting the legitimate business expectations of Defendant."). Nor does Newell allege that she was physically threatened or humiliated in a way that created a severely hostile atmosphere. See E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (Fourth Circuit has a "high bar" plaintiffs must clear to demonstrate severe or pervasive element of a hostile work environment). While possibly unprofessional, the comments and actions taken by Newell's colleagues at most could be described as rude. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006) (rude treatment of an individual does not create a hostile work environment). Because Newell's pleadings do not state that more than mere speculative minor harm occurred, or that Newell's job performance was affected, Newell's ADAAA hostile work environment claim must be dismissed.

## IV. Conclusion

For the foregoing reasons, Newell's amended complaint sufficiently pleads the elements of Count II's claim for retaliation in violation of the ADEA and Count III's claim for discrimination in violation of the ADAAA by wrongfully terminating Newell because of her disability. However, Newell's amended complaint does not sufficiently plead the elements of Count III's claim for discrimination in violation of the ADAAA by creating a hostile work environment because of Newell's disability. Therefore, the Court **DENIES** Carter Bank's

motion to dismiss as it relates to Count II's ADEA retaliation violation claim and Count III's ADAAA wrongful termination claim. The Court **GRANTS** Carter Bank's motion to dismiss as it relates to Count III's ADAAA hostile work environment claim. An appropriate order will be entered.

Entered:   03/14/2022

Michael F. Urbanski
Chief U.S. District Judge
2022.03.14 14:36:55 -04'00'

Michael F. Urbanski
Chief United States District Judge